UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-CR-20811-DMM

UNITED STATES OF AMERICA

v.

OSCAR PERALTA,
FRANCISCO PERALTA, and
CARLOS CONTRERAS,

         Defendants.
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM AND RESPONSE TO DEFENDANTS' OBJECTIONS TO PRE-SENTENCE INVESTIGATION REPORT**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this sentencing memorandum, which addresses the objections to the Presentence Investigation Report ("PSI") submitted by defendants Oscar Peralta (DE 102), Carlos Contreras (DE 103), and Francisco Peralta (DE 104). The Defendants raise a number of individual objections, which are discussed separately. Francisco Peralta and Oscar Peralta both challenge the enhancement for maintaining a drug-involved premises, which is discussed in Section D. For the following reasons, the Court should deny all of the objections raised by the defendants.

    A. **Oscar Peralta Objections**

Defendant Oscar Peralta (hereafter "O. Peralta") argues that he did not act as a manager or supervisor. He claims that Juan Jose Duarte was the manager of the conspiracy and that he (O. Peralta) was merely executing Duarte's directives.

Section 3B1.1(a) specifies that a four-level enhancement applies if: (1) the defendant was an organizer or leader of criminal activity; and (2) the criminal activity involved five or more

participants or was otherwise extensive. Factors that a court should consider when determining whether this enhancement applies include:

>   (1) the exercise of decision-making authority;
>
>   (2) the nature of participation in the commission of the offense;
>
>   (3) the recruitment of accomplices;
>
>   (4) the claimed right to a larger share of the fruits of the crime;
>
>   (5) the degree of participation in planning or organizing the offense;
>
>   (6) the nature and scope of the illegal activity; and
>
>   (7) the degree of control exercised over others.
>
>   U.S.S.G. § 3B1.1, comment. (n. 4).

"There is no requirement that all of the considerations have to be present in any one case. *United States v. Caraballo*, 595 F.3d 1214, 1214, 1231 (11th Cir. 2010) (quotation omitted). Evidence that the defendant recruited and instructed participants in the conspiracy is sufficient to support a leadership enhancement. *United States v. Ndiaye*, 434 F.3d 1270, 1304 (11th Cir. 2006); *see also United States v. Torrez*, 612 F. App'x 559, 562 (11th Cir. 2015) (affirming enhancement where defendant recruited his girlfriend, among others, to procure and package the items in which the cocaine would be secreted).

The above-noted role enhancement is not dependent on the number of persons whom a given defendant has directed, but the number of participants in the conspiracy as a whole. *United States v. Rendon*, 354 F.3d 1320, 1332-33 (11th Cir. 2003); *United States v. Vasquez*, 486 F. App'x 830, 833 (11th Cir. 2012). Moreover, providing funding for a criminal endeavor also supports a

§ 3B1.1 enhancement.  *Vasquez*, 486 F. App'x at 834-35 (citing *United States v. Ramsdale*, 61 F. 3d 825, 830 (11th Cir. 1995)).

The uncontroverted facts in the PSI amply support the conclusion that that O. Peralta was a leader/organizer in the group. The Defendant recruited his brother, Francisco Peralta (hereafter "F. Peralta") to assist him with logistics for the drug trafficking venture.  Specifically, he delegated the rental of the Fort Lauderdale home to F. Peralta.  The Fort Lauderdale home was essential to the smuggling venture, supplying a private dock and an enclosed garage for the transfer and concealment of over 450 kilograms of cocaine.  O. Peralta also tasked his brother with securing two rental apartments, located the Opera apartment complex in Brickell, which served as additional storage in the event drug proceeds or cocaine needed to be housed temporarily prior to reaching the next step in the distribution chain (PSI ¶22).  In an earlier smuggling venture, the drug trafficking organization had rented two apartments in this same building to transport and distribute the smuggled cocaine, further supporting the apartments' intended uses in the present trip.  For his efforts, the Defendant expected to be paid a quarter of a million dollars, $36,000 of which was seized, in cash, located inside a duffel bag in one of the *M/V Nivia*'s cabins.

Although not the primary reason for applying the enhancement, O. Peralta's funding of certain criminal activities also warrants consideration.  He admitted that the duffel bag found inside the *Nivia* containing approximately $36,000 constituted part of his compensation for the trip.  O. Peralta also admitted that he paid for trip-related expenses, such as fuel, food, and other sundries, from his portion of the proceeds.  Accordingly, the Defendant funded a crucial part of the criminal endeavor.

3

To the extent the Defendant seeks to minimize his culpability by pointing to his co-manager, Duarte, this argument ignores the fact that a conspiracy can have more than one leader. *United States v. Loevell*, 579 F. App'x 875 (11th Cir. 2014) ("The fact that coconspirators made daily business decisions for the [illegal business] and controlled [its] finances did not negate [defendant's] organizational or leadership role in the conspiracy, because there can be more than one organizer or leader of a conspiracy"). In fact, it makes sense that increasingly complex conspiracies, such as transnational, multi-hundred-kilogram ventures, need multiple managers to ensure coordinated efforts among multiple co-conspirators.

**B. Francisco Peralta Objections**

   a. Minimal Role

Francisco Peralta (hereafter "F. Peralta") objects to the two-level minor role reduction applied by the PSI, arguing that he is entitled to a three-level reduction as a minimal player in the conspiracy.

The minimal-participant reduction is reserved for those "who play[] a minimal role in the concerted activity," and "who are plainly among the least culpable of those involved in the conduct of a group." *Id*. § 3B1.2, comment. (n. 4). The adjustment is to be used infrequently. *Id.* The Defendant bears the burden of establishing, by a preponderance of the evidence, that he deserves a minor-role reduction. *United States v. Rodriguez De Varon*, 175 F. 3d 930, 937 (11th Cir. 1999).

Courts use the analysis deployed by the *De Varone* Court to determine whether a mitigating role adjustment applies. 175 F.3d 930 (11th Cir. 1999). First, courts consider the defendant's role in the relevant conduct for which he has been held accountable at sentencing, and, second, his role relative to that of other participants in his relevant conduct. *Id*. at 940. "Only if the defendant can

4

establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable—not a minor role in any larger criminal conspiracy—should the district court grant a downward adjustment for minor role in the offense." *United States v. Mendez*, 405 F. App'x 444, 448 (citing *De Varone*, 175 F.3d at 944). Additionally, the amount of drugs involved in the conduct is relevant and may be determinative in the context of minimal participants. *De Varone*, 175 F. 3d at 943. Not surprisingly, knowledge of the conspiracy's scope and purpose is a key factor in assessing a defendant's role. *Mendez*, 405 F. App'x at 448-49 (concluding that district court's application of minor—but not minimal—role was appropriate given the disparity in knowledge between the least culpable player and the defendant).

F. Peralta cannot establish that he is among the least culpable players in the relevant conduct. Specifically, his offense level was based on cocaine that he personally conspired to transport, rather than the amount of cocaine trafficked by the conspiracy as a whole. When compared to his co-defendants, too, it is clear he is not the lowest player in the hierarchy. For example, unlike Carlos Contreras, who joined the conspiracy after co-conspirators (including F. Peralta) had concluded much of the planning and logistics for the overseas transport, F. Peralta was brought in at the early stages of the scheme.

F. Peralta was instrumental in advancing the conspiracy's goals at pivotal points. Painting the Defendant as a minimal player overlooks these crucial contributions to the conspiracy, namely:

1) F. Peralta rented the Fort Lauderdale house for his co-conspirators. Without the house and adjoining private dock, the *Nivia* would have had to stop at a public dock, risking law enforcement detection and thwarting the drug-smuggling mission.

2) F. Peralta rented the vehicles that were going to be used to transport the drugs on the

> night the *Nivia* arrived in Fort Lauderdale.
>
> 3) F. Peralta rented two apartments in Miami, which were going to be used to store drugs and/or drug proceeds.
>
> 4) F. Peralta procured the storage bins and duffel bags that were going to be used to transport the cocaine bricks. These materials, too, were an essential part of the plot, because they would have allowed the conspirators to disguise the contraband in relatively innocuous baggage.

Importantly, text conversations between O. Peralta and F. Peralta confirm that the two were planning logistics for the trip weeks before the *Nivia* docked at the Fort Lauderdale house. The foregoing facts show that the Defendant was not a minimal participant in this conspiracy. Rather, he played an important role in furthering the conspiracy by providing logistical support. As the Eleventh Circuit has previously noted, a defendant who was a "conduit" through which an illegal scheme could operate is not entitled to any mitigating role, let alone minimal role. *United States v. McDonald*, 497 F. App'x 907, 911 (11th Cir. 2012). While it is true his role was secondary to the scheme's supervisors (Duarte, O. Peralta), F. Peralta is, at best, equally culpable with Contreras and therefore does not merit a minimal role reduction.

    b. Safety Valve

F. Peralta objects to the fact that the PSI did not apply a safety-valve reduction. Safety valve is contingent upon the defendant's complete and truthful admission of his unlawful conduct. It is the government's position that, at this time, F. Peralta has not provided a complete and truthful account of his unlawful conduct. The parties are in the process of arranging a second debrief and the United States will supplement its response after that meeting has taken place.

### C. Carlos Contreras

Carlos Contreras, like F. Peralta, challenges the PSI's application of a minor, but not a minimal, role reduction. As noted above, Contreras joined at the tail end of the conspiracy, after the drugs had already been imported into the United States. Nevertheless, the Guidelines make plain that a minimal player need not be part of every conspiracy. *De Varon*, 175 F.3d at 944 ("The fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants."). In the present case, the defendant was an important part of the plot. And, although he lacked knowledge of the specific details of this trip, based on his prior course of dealing with Duarte, he knew that his efforts would further an illegal cocaine smuggling venture. Moreover, the large quantity of drugs involved in this case, a quantity that the Defendant had every reason to expect from Duarte, also support a finding of minor, but not minimal role.

### D. Drug Involved Premises

Defendants F. Peralta and O. Peralta argue that the PSI misapplied the two-point offense-level enhancement under Guidelines Section 2D1.1(b)(12). This subsection was added in response to a directive from the Fair Sentencing Act, which instructed the Sentencing Commission to add a two-level enhancement "as generally described in . . . (21 U.S.C. [§] 856)." Fair Sentencing Act of 2010, Pub.L.No. 111-220, § (6)(2), 124 Stat. 2373 (2010). This statute makes it illegal to "knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a)(1). Section 2D1.1(b)(12) tracks this statutory language closely, adding the enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or

7

distributing a controlled substance," including storage of a controlled substance for the purpose of distribution. Application Note 17 to Section 2D1.1(b)(12) provides that the court should consider "whether the defendant held a possessory interest in . . . the premises" and "the extent to which the defendant controlled access to, or activities at, the premises." The application note further states that manufacturing or distributing a controlled substance "need not be the sole purpose for which the premises was maintained," though it "must be one of the defendant's primary or principal uses for the premises." When determining a property's "principal use," a court may consider "how frequently the premises was used by the defendant for lawful purposes."

Applying this framework to the present facts, it is evident that the Fort Lauderdale home was a drug-involved premises. Beyond having a "primary use" in drug trafficking, this was the only use that the conspirators had for the home. The defendants selected this particular home because it could accommodate a 50-foot boat, the *Nivia*. Another advantage of the house was its spacious garage, which could accommodate the rental vehicles they would be loading with drug-filled bins and duffel bags. In brief, the house provided an important cover from prying civilians or, worst of all, law enforcement.

In terms of ownership interest, O. Peralta and F. Peralta rented the house for several days so that the conspirators would have exclusive access to the property in the days leading up to and after the drug offload. Again, this was a calculated effort directed toward preventing detection.

Based on these facts, and all other facts outlined in the PSI, the drug-involved premises enhancement was appropriate and the Defendants' objections should be overruled.

## **Conclusion**

For the reasons stated above, the United States respectfully submits that the Defendant's Objections to the PSI should be overruled.

    Respectfully submitted,

    ARIANA FAJARDO ORSHAN
    UNITED STATES ATTORNEY

By:    /s/ *Yeney Hernandez*
    YENEY HERNANDEZ
    Assistant United States Attorney
    Court ID No. A5502300
    99 Northeast 4th Street
    Miami, Florida 33132-2111
    Tel.: (305) 961-9277
    Fax: (305) 530-7976
    Email: Yeney.Hernandez@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 22, 2021, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

*/s/Yeney Hernandez*
Assistant United States Attorney